UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Environmental Graphics, LLC,

       Plaintiff,

v.

       **MEMORANDUM OPINION
AND ORDER**
Civil No. 13-166 ADM/AJB

Medical Murals, LLC,

       Defendant.

_____

Lora M. Friedemann, Esq., Patrick D.J. Mahlberg, Esq., and Ted C. Koshiol, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Plaintiff.

Andrew M. Leone, Esq., Leone Legal, PA, Chanhassen, MN, on behalf of Defendant.
_____

## I. INTRODUCTION

On May 6, 2013, the undersigned United States District Judge heard oral argument on Defendant Medical Murals, LLC's ("Medical Murals") Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 5]. For the reasons stated herein, Defendant's motion is granted.

## II. BACKGROUND

Medical Murals is a Florida company that sells backlit murals, LED light boxes, and foam frames and soffits for hospitals, hotels, and other commercial buildings. Mahlberg Decl. [Docket No. 9] Ex. 2. Medical Murals' sole owner is Ron Holcomb, a Florida resident. Holcomb Aff. [Docket No. 5] (filed as part of Def.'s Mot. to Dismiss). In December 2011, Holcomb contacted Environmental Graphics, LLC, ("Environmental Graphics"), a Minnesota company that produces scenic wall murals. Holcomb inquired about collaborating with Environmental Graphics on a project for a customer in Pennsylvania. Imholte Decl. [Docket No.

10] ¶¶ 2,4; Ex. 1.  The potential collaboration did not develop beyond Holcomb's initial inquiry.  Pl.'s Mem. Opp. Dismissal [Docket No. 7] 5.

On January 16, 2013, Holcomb sent an email to Environmental Graphics about its use of the term "medical murals" on its website.  Imholte Decl. at Ex. 2.  Holcomb accused Environmental Graphics of adding the term to its website to divert online traffic from Medical Murals.  Id.  Holcomb claimed the term was "copywrited [sic] and incorporated."[1]  Id.  Also in his January 16 email, Holcomb wrote, "Take it [the term "medical murals"] down or I'll have my attorney file suit here in Florida."  Imholte Decl. at Ex. 2.  Environmental Graphics' President, Todd Imholte, responded to Holcomb by explaining that the term "medical murals" is a generic term used to describe murals for the medical market.  Id.  Imholte did not agree to remove the term from the website, but he invited Holcomb to call and discuss the issue.  Id.

Before any discussion with Imholte, Holcomb emailed Environmental Graphics' internet service provider, Rackspace, US Inc. ("Rackspace").  Id. at Ex. 3.  Holcomb demanded that Rackspace take down Environmental Graphics' website and threatened to sue Rackspace if it continued to "assist [Environmental Graphics'] wrongful scheme."  Id.  Rackspace forwarded this complaint to Environmental Graphics and asked it to respond to Holcomb's claims.  Id.  Rackspace suggested that trademark registration numbers or other proof of ownership would be helpful, but it did not require anything in particular and it did not say what action it would take on Environmental Graphics' website.  Id.

The following day, Environmental Graphics filed this lawsuit against Medical Murals

---

[1] Environmental Graphics avers Medical Murals did not apply to register the phrase "medical murals" with the United States Patent and Trademark Office until January 27, 2013, after Holcomb's email to Environmental Graphics.  Mahlberg Decl. at Ex. 5.

seeking a declaratory judgment that its use of the phrase "medical murals" does not infringe Medical Murals' intellectual property rights. The Complaint also alleges tortious interference with its business. Compl. [Docket No. 1] 6-8.

## III. DISCUSSION

### A. Personal Jurisdiction Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must make a prima facie showing that the defendant can be subjected to jurisdiction within the state. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). A plaintiff can make its prima facie case with sufficient facts supporting a "reasonable inference" that the court has personal jurisdiction to hear the case against the defendant. K-V Pharm. Co. v. J. Uriarch & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011).

Personal jurisdiction is limited by two considerations: the long-arm statute of the forum state and the Due Process Clause. Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696-97 (8th Cir. 1995). Minnesota's long-arm statute conveys personal jurisdiction to the maximum extent allowed by due process, so the operative question is whether exercising personal jurisdiction would offend due process. Id. at 697.

Due process requires that the defendant have "minimum contacts" with the forum state such that exercising personal jurisdiction over the defendant "does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Under the minimum contacts test, a court asserting jurisdiction is appropriate where a corporate defendant has purposefully availed itself of the privilege of conducting business activities in the forum state and, therefore, should

reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Attenuated contacts will not suffice; rather, the contacts must establish a "substantial connection" between the defendant and the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Personal jurisdiction may be "general" or "specific." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010). When the defendant has "continuous and systematic" contacts with the forum state, the court may have general jurisdiction over the defendant even in cases unrelated to the contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). When the defendant's contacts are not continuous and systematic, the court may have specific jurisdiction over the defendant in cases that "arise out of or relate to" the defendant's contacts with the forum state. Burger King, 471 U.S. at 472. In this case, Environmental Graphics argues that the Court has specific jurisdiction over Medical Murals. Pl.'s Mem. Opp. Dismissal at 13.

## B. Evaluating Minimum Contacts

The United States Court of Appeals for the Eighth Circuit uses a five-factor test to evaluate minimum contacts. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003). The three primary factors relate to the contacts themselves: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; and (3) the relationship between the cause of action and the contacts. Id. Two secondary factors are the forum state's interest in providing a forum for its residents and the convenience of the parties. Pecoraro, 340 F.3d at 562. "[Courts] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination." Johnson, 614 F.3d at 794.

In cases involving intentional torts, the Supreme Court has recognized that when nonresident defendants act outside the forum state, the effects of defendant's actions felt in the forum state are relevant to specific jurisdiction.  Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Under the Eighth Circuit's formulation of the Calder effects test, jurisdiction can arise out of defendant's actions if the conduct (1) was intentional, (2) was "uniquely or expressly" directed at the forum state, and (3) caused harm that the defendant knew would be suffered in the forum state.  Johnson, 614 F.3d at 796.  The Court uses the Calder effects test "merely as an additional factor" in the minimum contacts analysis.  Id. at 796-97.  "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."  Id. at 797.

**C. The Primary Factors: Medical Murals' Contacts with Minnesota**

Environmental Graphics argues that the Court has specific jurisdiction over Medical Murals based on three contacts between Medical Murals and Minnesota: the proposal to collaborate on a project with Environmental Graphics, the "cease-and-desist email" to Environmental Graphics, and the request to have Environmental Graphics' website taken down.  Pl.'s Mem. Opp. Dismissal at 13.  The relevance and significance of each of these contacts to specific jurisdiction will be considered in turn.

**1. Proposal to Collaborate**

Environmental Graphics calls Medical Murals' December 2011 proposal to collaborate "the genesis of this dispute."  Id. at 5.  But, this lawsuit does not arise out of that contact.  Avocent Hunstville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1332 (Fed. Cir. 2008) (holding only in-forum contacts related to the defendant's enforcement of an intellectual property right give rise to specific jurisdiction in a declaratory judgment action, and finding prior sales did not relate

to the intellectual property rights at issue); Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785, 790-91 (Fed. Cir. 2011) (excluding from the specific jurisdiction analysis defendant's attempts to negotiate a licensing agreement with the plaintiff). Medical Murals' proposal to collaborate with Environmental Graphics was just that, a proposal. At that time, over a year prior to the dispute here, the term "medical murals" was not at issue, nor were intellectual property rights at issue. Thus, the proposal is not a relevant contact in establishing specific jurisdiction in this case.

**2. Cease-and-Desist Email**

The next contact Environmental Graphics identifies is the email Holcomb sent on January 16, 2013. The email demanded Environmental Graphics remove the phrase "medical murals" from its website. If Environmental Graphics did not remove the term, Holcomb wrote, he would sue Environmental Graphics in Florida. Holcomb's email is essentially a cease-and-desist letter.

As Environmental Graphics concedes, cease-and-desist letters to a suspected infringer do not, by themselves, establish personal jurisdiction over the sender. Pl.'s Mem. Opp. Dismissal at 14; Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (defendant's three cease-and-desist letters alleging infringement did not give the court jurisdiction over plaintiff's declaratory judgment action for non-infringement). In Red Wing, the Federal Circuit held that cease-and-desist letters were contacts between a defendant and Minnesota, but concluded that exercising personal jurisdiction over a defendant on that basis alone would violate the requirement that personal jurisdiction comport with "fair play and substantial justice." 148 F.3d at 1360. The court reasoned that it would be unfair to subject a

defendant to jurisdiction in a foreign forum simply for informing others of its intellectual property rights.  Id. at 1361.

Similarly here, Medical Murals' cease-and-desist email does not establish personal jurisdiction.  The email is a contact between Medical Murals and Minnesota, but exposing Medical Murals to personal jurisdiction in Minnesota on this contact alone would violate traditional notions of fair play and substantial justice.  Medical Murals contends it has intellectual property rights over the phrase "medical murals."  Simply asserting those rights in an email does not establish personal jurisdiction.

### 3. Request to Have Website Taken Down

The third contact Environmental Graphics identifies is Medical Murals' request for Environmental Graphics' internet service provider Rackspace to take down Environmental Graphics' website.  Environmental Graphics does not allege where Rackspace is located.  Instead, Environmental Graphics relies on the Calder effects test to establish a contact, a geographic link between Minnesota and the take-down request, no matter wherever Rackspace might be located.

The Eighth Circuit has not decided whether the effects of a defendant's out-of-forum take-down request, or other third-party enforcement action, can establish a contact sufficient to warrant personal jurisdiction in the forum.  Environmental Graphics argues the Ninth and Tenth Circuits use the Calder effects test and have ruled that these enforcement actions and their effects can warrant jurisdiction.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087-89 (9th Cir. 2000); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1082 (10th Cir. 2008).  On the other hand, the Federal Circuit has repeatedly held that attempts at third-party

enforcement only establish personal jurisdiction when the third party is located in the forum state.  Radio Sys., 638 F.3d at 792 (following Avocent, 552 F.3d at 1340).[2]

In this case, the similarity of the facts suggest following the Federal Circuit's precedent. The Federal Circuit crystallized its position on the jurisdictional consequences of third-party enforcement in Radio Systems.  638 F.3d at 792.  In Radio Systems, an inventor tried to sell, or license, a product to an established company.  Id. at 787-89.  The inventor thought the company was trying to steal his invention; therefore, when he discovered that the company had applied for a patent on what he thought of as his invention, he contacted the Patent and Trademark Office ("PTO") and reminded the PTO of his already existing patent.  Id.  The PTO withdrew its preliminary allowance of the company's proposed patent.  Id.  The company then sought declaratory judgment of non-infringement in its home district.  Id.  The district court found it lacked personal jurisdiction and the Federal Circuit affirmed.  The Federal Circuit in Radio Systems explained, "[w]arnings and threats of infringement suits are typical" and the inventors' enforcement contacts were directed at the PTO's forum, not at the company's home forum.  Id. at 791.  The company cited Dudnikov and Bancroft to argue that the inventor's contact with the PTO established personal jurisdiction in its home forum, but the Federal Circuit held that this argument conflicted with its precedent: ". . . enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum."  Id. at 792.  For purposes of the specific jurisdiction analysis, considering only those third-party enforcement efforts that

---

[2] Environmental Graphics cites the Federal Circuit's decision in Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008), in support of its argument that the effects of third-party enforcement efforts can establish personal jurisdiction; however, the Federal Circuit addressed Campbell Pet in Radio Systems, noting that the third-party enforcement efforts in that case occurred in the forum state.  Radio Systems, 638 F.3d at 791-92.

occur in the forum state ensures that the defendant purposefully directed those efforts at the forum state.[3]

In this case, no information has been provided about Rackspace's physical location. The Court cannot assume for the purposes of this motion that Rackspace is located in Minnesota. This places Environmental Graphics in a position very like the company in Radio Systems. Environmental Graphics saw the likelihood of a lawsuit and decided to file in its home forum before it was hailed into court somewhere else. Holcomb's email to Rackspace, requesting enforcement of his claimed intellectual property rights, must be seen as an out-of-forum enforcement communication. Thus, the email does not warrant this Court asserting its jurisdiction over Medical Murals.

Even if the Calder effects test is used, Environmental Graphics has not met the threshold necessary to establish contact with this jurisdiction. Environmental Graphics argues that the take-down request in conjunction with the cease-and-desist email establishes minimum contacts for jurisdiction. Furthermore, Environmental Graphics argues that the take-down request eliminates the fairness concern cited in Red Wing because the request crosses the line between

---

[3] For intellectual property cases involving declaratory judgment requests, the Federal Circuit's approach essentially replaces the Calder effects test with the in forum bright line rule, making Environmental Graphics' reliance on Ballistic Prods., Inc. v. Precision Reloading, Inc., No. 03-2950, 2003 U.S. Dist. LEXIS 13148 (D. Minn. July 28, 2003), misplaced. Ballistic Products did not involve an action for a declaration of non-infringement. The plaintiff in Ballistic Products filed to enjoin defendant's use of two domain names that were slight misspellings of the plaintiff's name. Id. at *1-3. The Court concluded that it had general jurisdiction based on the defendant's marketing and sales in Minnesota as well as specific jurisdiction based on the defendant's allegedly infringing domain names and the Calder effects test. Id. at *9, 12-13. The Court's decision in Ballistic Products does not support finding specific jurisdiction through the Calder effects test here because the parties' positions are reversed.

asserting an intellectual property right and attempting to enforce that right. Pl.'s Mem. Opp. Dismissal at 14-15 (citing Bancroft, 223 F.3d at 1087-89; and, Dudnikov, 514 F.3d at 1082). But, the take-down request was an informal, indirect challenge to Environmental Graphics' use of the term "medical murals." Medical Murals sent a take-down request to Rackspace, which then forwarded the request to Environmental Graphics and asked for a response. Imholte Decl. at Ex. 3. Environmental Graphics satisfied Rackspace's concerns by having its President and its lawyer email Rackspace and confirm that its use of the phrase "medical murals" did not infringe any intellectual property right held by Medical Murals. Id.

Environmental Graphics argues that the take-down request was more serious and significant than appearances might suggest because it had the potential to halt Environmental Graphics' online sales, which account for 90% of its business. Pl.'s Mem. Opp. Dismissal at 4, 15. However, Environmental Graphics has not provided any evidence that Rackspace would have actually taken down the website. Rackspace never told Environmental Graphics what it planned to do in response to Medical Murals' take-down request, and Environmental Graphics has not provided any information on Rackspace's policy for such requests.

Rackspace's response to the take-down request creates a significant difference between this case and the Ninth and Tenth Circuit decisions Environmental Graphics cites. The take-down requests in the Ninth and Tenth Circuit cases carried serious consequences. In Dudnikov, the defendant was a member of eBay's Verified Rights Owner Program, which triggered a policy automatically cancelling the plaintiff's auction. 514 F.3d at 1068. In Bancroft, the defendant's cease-and-desist letter to the domain name registrar triggered a policy that required the plaintiff to obtain a declaratory judgment in order to continue using its domain name. 222 F.3d at 1085.

Because Medical Murals' take-down request caused much less response than Dudnikov and Bancroft, the Court concludes that the nature and quality of the effects-based contact between Medical Murals and Minnesota is different and less significant.  Exercising personal jurisdiction based on the effects of the take-down request in this case would require lowering the minimum contacts threshold even further than in Dudnikov or Bancroft.

### 4.  Summary of Medical Murals' Contacts with Minnesota

For the purpose of establishing personal jurisdiction in this case, the Court finds that Medical Murals has only one significant contact with Minnesota, the cease-and-desist email it sent to Environmental Graphics.  The proposal is not a contact because it arose before it could be considered related to the infringement action.  The email to Rackspace is not a contact because it was directed outside the forum, but even if the email's effects were directed at Minnesota, the contact did not rise to the level necessary for Holcomb to expect being haled into court here.  As explained above, the cease-and-desist letter alone is not enough to establish personal jurisdiction.

## D. The Secondary Factors: Interest of the Forum State and Convenience of the Parties

Under the Eighth Circuit's five-factor test for evaluating minimum contacts, the three primary factors are largely dispositive.  Pecoraro, 340 F.3d at 562.  However, there are two secondary factors that the Court must consider: the interest of the forum state in providing a forum for its residents and the convenience of the parties.  Id.  In this case, these secondary factors do not support exercising personal jurisdiction over Medical Murals.

Although Minnesota has an interest in providing a forum for its residents to litigate against non-residents, this interest "cannot make up for the absence of minimum contacts."  Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 376 (8th Cir. 1990).  The interest of

the forum state is not a factor in this analysis.

Any forum for this case will be inconvenient for at least one of the parties, because Environmental Graphics is located in Minnesota and Medical Murals is located in Florida. However, litigating in a foreign forum would be more inconvenient to Medical Murals than to Environmental Graphics. Holcomb is the sole owner of Medical Murals and has made the court aware of significant health problems that make travel difficult. Def.'s Mem. Supp. Dismissal at Ex. 1. This factor weighs slightly against the Court exercising personal jurisdiction over Medical Murals.

**F.  Remaining Claims**

Environmental Graphics' tortious interference and material misrepresentation claim under 17 U.S.C. § 512(f) depend on the outcome of its declaratory judgment action because those claims depend on a finding of non-infringement. If Environmental Graphics' use of the phrase "medical murals" did in fact infringe an intellectual property right held by Medical Murals, then Medical Murals' attempts to enforce its rights would potentially have been justified. See Avocent, 552 F.3d at 1340 (citing Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006)). Therefore, there is no need to analyze whether these claims have separate jurisdiction from the declaratory judgment claim.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 5] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:   July 2, 2013